UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHERISE A.,

                                        Plaintiff,

v.                                                          3:19-CV-559
                                                            (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                          OF COUNSEL:

LACHMAN & GORTON                      PETER A. GORTON, ESQ.
Attorney for Plaintiff
1500 E. Main Street
P.O. Box 8
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.           LOUIS JOHN GEORGE, ESQ.
 *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff Cherise A. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for Social Security Disability Insurance ("SSDI").

(Dkt. No. 1.)  This case has proceeded in accordance with General Order 18 of this Court which

sets forth the procedures to be followed when appealing a denial of Social Security benefits.

Both parties have filed briefs.  (Dkt. Nos. 12, 17.)  Oral argument was not heard.  Pursuant to 28

U.S.C. § 636(c), the parties have consented to the disposition of this case by a Magistrate Judge. (Dkt. Nos. 7, 8.)  For the reasons discussed below, the Commissioner's decision denying Plaintiff's disability benefits is affirmed.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on January 29, 1975.  (Administrative Transcript at 36, 134.[1])  She dropped out of high school, but subsequently obtained her GED and briefly attended college.  (T. 36, 160.)  Her previous employment included work as a food service employee and residential aide at a senior living facility.  (T. 36-37, 174.)  In 2014, Plaintiff suffered a back injury requiring surgery.  (T. 40, 135.)  At the initial application level, Plaintiff alleged disability due to continued lower back pain that radiated down her left leg, causing numbness.  (T. 41, 135.)

On February 10, 2016, Plaintiff filed an application for disability benefits, alleging an onset date of April 23, 2014.  (T. 134-135.)  Plaintiff's application was initially denied on April 21, 2016.  (T. 61-69.)  Thereafter, Plaintiff filed a written request for a hearing, which was held on June 21, 2018 by Administrative Law Judge ("ALJ") Robert A. Lynch.  (T. 30-60.)  During the hearing, Plaintiff amended her alleged onset date to her application date of February 10, 2016.  (T. 34.)  On August 15, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 12-29.)  On March 17, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Plaintiff commenced this action on May 10, 2019.  (Dkt. No. 1.)

## II.     RELEVANT LEGAL STANDARD

---

[1]  The Administrative Transcript is found at Dkt. No. 11.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system. Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

A.      **Standard for Benefits**[2]

To be considered disabled, a plaintiff seeking disability benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether

an individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The

Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.

Yuckert*, 482 U.S. 137, 140-42 (1987).  Under the five-step sequential evaluation process, the

decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there

---

[2]  **While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).**

> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v.*

*Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.

1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the

defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of

working.  *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted).  A reviewing

court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal

standards were applied, even if the decision appears to be supported by substantial evidence.

*Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42

U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the

crucial factors justifying his findings with sufficient specificity to allow a court to determine

whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248

(N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence"

4

is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Rutherford*, 685 F.2d at 62 (2d Cir. 1982).

C.    **Standards for ALJ Evaluation of Opinion Evidence**

In making a disability determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue.  SSR 96-5p, 1996 WL 374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings."  The responsibility for determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's Residual

Functional Capacity ("RFC"); how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

In terms of weighing opinion evidence, the Second Circuit has long recognized the treating physician rule set out in 20 C.F.R. § 404.1527(c).[3] "Thus, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case "the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418

---

[3] For claims filed on or after March 27, 2017, a new set of regulations apply. These new regulations do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). But since Plaintiff filed her claim on February 10, 2016, the treating physician rule applies. *See Claudio v. Berryhill*, No. 3:17-CV-1228 (MPS), 2018 WL 3455409 at *3 n.2 (D. Conn. July 18, 2018) ("Since [the plaintiff] filed her claim before March 27, 2017, I apply the treating physician rule under the earlier regulations.").

(2d Cir. 2013)).  "Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196 (GTS/WBC), 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)), adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129) (alteration in original). "The failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  *See* 20 C.F.R. § 404.1527(c)(1)-(6).  Additionally, when weighing opinions from sources who are not considered "medically acceptable sources" under the regulations, the ALJ must consider the same factors as used for evaluating opinions from medically acceptable sources.  *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); SSR 06-03p, 2006 WL 2329939.

## III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. 15-25.)  In his August 15, 2018, decision, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 10, 2016, the date she applied for SSDI benefits.  (T. 17)  The ALJ determined Plaintiff has the following severe impairments: obesity, chronic midline low back pain; small annular fissure; mild bilateral neural

foraminal narrowing; mild epidural fibrosis status post hemilaminectomy at L5 to S1; and

bilateral knee pain.  *Id.*  The ALJ determined Plaintiff did not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20

C.F.R. § 404, Subpart P, Appendix 1.  (T. 18.)  He found Plaintiff has the RFC to perform

sedentary work as defined in 20 C.F.R. 416.967(a) except:

> [Plaintiff] can lift 10 pounds occasionally and 5 pounds frequently;
> she can stand and/or walk for a cumulative total of 2 hours during
> an 8-hour workday, but for no more than 30 minutes continuously;
> she can sit for a cumulative total of 8 hours during an 8-hour
> workday, however, when performing seated work, she requires the
> opportunity to change positions every 30 minutes, without leaving
> the workstation or being off task, to relieve discomfort, and such
> positional changes would permit the [Plaintiff] to stand briefly for
> a period not to exceed 3 minutes; she can occasionally climb
> ramps and stairs; she can never climb ladders and scaffolds; she
> can occasionally stoop, kneel, and crouch; she can never crawl; she
> can use her upper extremities without limitation, except that she
> cannot perform repetitive activities with her upper extremities,
> meaning that she is limited to frequent pushing, pulling, reaching,
> and handling; she cannot work in environments that will result in
> concentrated exposure to extreme cold or vibration; she can never
> work at unprotected heights or around dangerous machinery; and
> she is limited to performing work that consists of simple, routine,
> and repetitive tasks due to symptoms of pain and/or medication
> side effects.

(T. 18.)  The ALJ then determined Plaintiff is unable to perform any past work; is defined as a

younger individual age 18-44 on the alleged disability onset date; has at least a high school

education; and is able to communicate in English.  (T. 24.)  At step five, considering Plaintiff's

age, education, work experience, and residual functional capacity, together with the VE

testimony, the ALJ concluded Plaintiff is "not disabled."  (T. 24-25.)  Thus, the ALJ determined

Plaintiff has not been under a disability, as defined in the Social Security Act, from February 10,

2016, through the decision date of August 15, 2018.  (T. 25.)

IV.    **THE PARTIES' CONTENTIONS**

Plaintiff contends the RFC is not supported by substantial evidence because the ALJ: (1) fails to properly weigh the medical opinion evidence; (2) improperly substitutes his lay opinion; (3) violates the treating physician rule; (4) does not properly assess Plaintiff's work history and activities of daily living; and (5) reaches a Step Five determination not supported by nor based on substantial evidence.  (Dkt. No. 12 at 9-25.)  In response, the Commissioner contends the ALJ's decision applied the correct legal standards and is supported by substantial evidence. (Dkt. No. 17 at 4-12.)

V.    **THE COURT'S ANALYSIS**

A.    **Residual Functional Capacity**

A claimant's RFC is the most she can do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id*. (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth

9

with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

**B.     Substantial Evidence Supports the ALJ's Analysis of the Record Evidence and Plaintiff's RFC**

The full range of sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday.  Sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996) (citing SSR 83-10, 1983 WL 31251, at *5).

As noted above, the ALJ found Plaintiff has the RFC to perform less than the full range of sedentary work, specifically:

> [to] lift 10 pounds occasionally and 5 pounds frequently; she can stand and/or walk for a cumulative total of 2 hours during an 8-hour workday, but for no more than 30 minutes continuously; she can sit for a cumulative total of 8 hours during an 8-hour workday, however, when performing seated work, she requires the opportunity to change positions every 30 minutes, without leaving the workstation or being off task, to relieve discomfort, and such positional changes would permit the [Plaintiff] to stand briefly for a period not to exceed 3 minutes; she can occasionally climb ramps and stairs; she can never climb ladders and scaffolds; she can occasionally stoop, kneel, and crouch; she can never crawl; she can use her upper extremities without limitation, except that she cannot perform repetitive activities with her upper extremities, meaning that she is limited to frequent pushing, pulling, reaching, and handling; she cannot work in environments that will result in concentrated exposure to extreme cold or vibration; she can never work at unprotected heights or around dangerous machinery; and she is limited to performing work that consists of simple, routine,

10

and repetitive tasks due to symptoms of pain and/or medication
side effects.

(T. 18.)

### 1.      Plaintiff's Medical Record

Before assessing the medical opinion evidence, the ALJ first considered each opinion's

consistency with Plaintiff's overall medical record, which he set forth in detail in his decision.

He noted Plaintiff's history of back pain and need for surgery in April 2014.  (T. 19, 36, 209-

210, 254.)  The ALJ also cited the findings of physicians who had reviewed nerve conduction

studies, MRI results and other imaging reports of Plaintiff's spine since her 2014 surgery.  (T.

20.)  These physicians found no significant deterioration or other change in Plaintiff's spine in

February 2015, September 2015, April 2017, May 2017, or July 2017.  (T. 209-210, 226, 285,

287, 289, 309, 315.)  Similarly, the ALJ reviewed imaging results showing only mild

degenerative changes despite Plaintiff's continued pain and tenderness in her knees, as well as

examination results typically showing a full or only moderately reduced range of motion in her

lower extremities and no problems with gait or stability.  (T. 21, 217, 236-237, 246, 276, 318.)

In his review of the treatment record, the ALJ also noted Plaintiff's receipt of

conservative treatment for her back and knee pain following her 2014 surgery.  (T. 21.)  Plaintiff

primarily treated her symptoms with ibuprofen, muscle relaxants, and exercise.  (T. 20-21, 233,

258.)  Even when Plaintiff visited an emergency room for severe back pain, the preferred

treatment was pain medication and muscle relaxants capable of being taken at home.  (T. 20,

315-316.)  The ALJ also cited record evidence showing Plaintiff's favorable response to this

conservative treatment.  (T. 20-21.)  Plaintiff reported mild to no pain at multiple medical

appointments, and reported walking for thirty minutes outside three to four times per week in

11

order to get some exercise.  (T. 20-21, 258, 260.)  All of these were relevant factors in calculating Plaintiff's RFC.  *See Ganoe v. Comm'r of Soc. Sec.*, No. 14-1396, 2015 WL 9267442, at *4 (N.D.N.Y. Nov. 23, 2015) ("To be sure, an ALJ may take plaintiff's conservative treatment into consideration as additional evidence to support his overall determination regarding a treating source's opinion.").

### 2.    Plaintiff's Daily Activities and Work History

The ALJ also considered Plaintiff's daily activities and her limited work history.  (T. 23.) Plaintiff testified she was able to cook, perform some cleaning, and go shopping, but her adult daughter helped her with more strenuous tasks.  (T. 23, 46.)  Although Plaintiff traced her physical limitations to her back injury in 2014, she testified she had not worked on a full time basis since 2010.  (T. 23, 37-38, 151.)  Between 2010 and 2014, she had only occasionally worked in temporary positions.  (T. 38, 151.)  Plaintiff was taking college classes during some of this period, but she did not offer an explanation for the extended gap in her employment record. (T. 23, 36.)  The ALJ properly considered Plaintiff's daily activities and Plaintiff's work history as two among many factors influencing the RFC determination.  *Lamorey v. Barnhart*, 158 F. App'x 361, (2d Cir. 2006) ("… it is entirely appropriate for an ALJ to consider a claimant's daily activities in assessing her credibility and capacity to perform work-related activities."); *Schaal v. Apfel*, 134 F.3d 496, 502-503 (2d Cir. 1998) (". . . it bears emphasizing that work history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony.").

In addition to the general discussion of Plaintiff's treatment record, daily activities, and work history, the ALJ also reviewed each of the medical opinions in detail.  Plaintiff contends that in determining the RFC, the ALJ erroneously substituted his own lay opinion over those

opinions.  This court disagrees, for the reasons set out below.

### 3.     Dr. Lawrence Weisner

On January 8, 2016, Dr. Lawrence Weisner performed an independent orthopedic

medical examination of Plaintiff.  (T. 232-234).  During the examination, Plaintiff displayed full

range of motion in her shoulders, elbows, wrists and hands, and full strength in her upper

extremities.  (T. 233.)  Dr. Weisner found full strength in Plaintiff's right lower extremities

including hip flexors, quadriceps, hamstring, and dorsiflexors, but slightly reduced strength,

described as 4/5, in her left lower extremities.  (*Id*.)  Plaintiff, who demonstrated "blunted reflex"

in her left knee and a positive straight leg raise[4] on the left side in the examination, reported

increased pain down her left side during the straight leg raise.  (T. 233.)

Dr. Weisner did not review Plaintiff's medical records before issuing his opinion, but

Plaintiff provided an oral summary during the examination.  (T. 232-233.)  Following her 2014

back surgery, she continued to have "significant low back pain with intermittent radiation down

her left leg, although [she said] that it is somewhat less."  (T. 232.)  She reported a difficult time

working and lifting as well as walking, sitting, and standing due to pain.  (*Id*.)  She also stated

she "must shift her weight while sitting or sit and stand every 10 to 15 minutes to become

comfortable" and relieve the pain in her left leg.  (*Id*.)  She reported no difficulty using her upper

extremities.  (*Id*.)

Based upon his examination, Dr. Weisner opined Plaintiff would require significant

weight restrictions at work, and could do no repetitive lifting, pushing, pulling, squatting,

bending, or carrying due to her lower back impairment.  (T. 234).  He also opined Plaintiff

---

[4] "The Straight Leg Raising (SLR) test has been used as the primary test to diagnos[e] lumbar disc herniations . . . ." Majlesi J, Togay H, Unalan H, Toprak S., *The sensitivity and specificity of the Slump and the Straight Leg Raising tests in patients with lumbar disc herniation,* http://www.ncbi.nlm.nih.gov/pubmed/18391677 (last visited 8/4/2020).

would "need frequent sit and stand at work." (*Id.*)  In Dr. Weisner's opinion, Plaintiff had no specific limitations with regard to her upper extremities, except for a restriction on the amount of weight she could lift.  (*Id.*)

On a check-box form labeled "Work Capacities" completed at the same time as the examination, Dr. Weisner opined Plaintiff could stand and walk for a total of less than two hours during an eight-hour workday and could sit for a maximum of four hours total.  (T. 228.)  He also indicated Plaintiff would need to change positions every ten to fifteen minutes while sitting, and change positions every fifteen minutes while standing.  (*Id.*)  He also opined Plaintiff would need the opportunity to shift at will from sitting or standing or walking.  (*Id.*)  Dr. Weisner also opined Plaintiff could frequently lift up to five pounds, and occasionally lift up to ten pounds. (*Id.*)  He further opined Plaintiff's conditions would cause her to be off task more than 33% of the workday, and to be absent from work more than four days per month.  (T. 230.)

The ALJ afforded "some, but not great" weight to Dr. Wiesner's opinion.  (T. 21.)  He also described this weight as "less than substantial."  (T. 22.)  In reviewing Dr. Weisner's opinion, the ALJ expressly considered the independent examiner's notes supporting limitations on Plaintiff's ability to lift, and showing a need to change positions between sitting and standing. (T. 21.)  The ALJ incorporated these findings into his RFC determination by limiting Plaintiff to sedentary work requiring only occasional lifting up to ten pounds, and jobs allowing Plaintiff to change positions every thirty minutes from sitting to standing.  (T. 18, 21.)

Plaintiff contends the ALJ disregarded the most restrictive aspects of Dr. Weisner's opinion, such as limiting Plaintiff to less than two hours total for walking or standing, and Plaintiff's need to change positions every fifteen minutes.  (Dkt. No. 12 at 13-15.)  Plaintiff argues the ALJ improperly substituted his own lay opinion that Plaintiff could stand and walk at

least two hours per workday, and sit for up to six hours, with a position change every half hour. This argument is unpersuasive.  As previously discussed, the ALJ reviewed Plaintiff's medical records suggesting sufficient control of Plaintiff's back and knee pain to allow her to stand and walk for longer periods and reduce the amount of time off-task.  (T. 21, 217, 233, 236-237, 246, 258, 276, 318.)  Dr. Weisner had no treatment history with Plaintiff and did not have access to her medical records during his single examination of Plaintiff.  (T. 232.)  Therefore, to the extent the ALJ improperly[5] speculated about Dr. Weisner's reliance on Plaintiff's subjective report of her physical abilities during the examination, such conclusion was premised on the ALJ's thorough review of the record evidence, and any error was harmless.

### 4. Dr. Gilbert Jenouri

On April 11, 2016, Dr. Gilbert Jenouri performed a consultative physical examination of Plaintiff.  (T. 235-239.)  He described Plaintiff as appearing in no acute distress, with a normal gait but an inability to walk on her heels and toes without difficulty.  (T. 236.)  She did not require a cane or other assistive device and was able to change for the examination, get on and off the examination table, and rise from a chair without difficulty.  (*Id*.)

During the examination, Plaintiff showed reduced flexion, extension, and rotary movement in the cervical and lumbar spine.  (T. 236-237.)  She had a positive straight leg raise on both sides.  (T. 237.)  She showed full range of motion in the elbows, forearms, and wrists bilaterally, but reduced range of motion in both shoulders.  (*Id*.)  Dr. Jenouri described Plaintiff's hand and finger dexterity as intact, with full grip strength bilaterally.  (*Id*.)  Upon examination of

---

[5] In support of her argument that remand is required when an ALJ rejects a medical opinion because it is based only on Plaintiff's own description of her symptoms, Plaintiff cites cases involving a treating physician, who would be entitled to greater deference than an independent examiner such as Dr. Weisner.  *See Nix v. Astrue*, No. 07-CV-344, 2009 WL 3420616, at *9 (W.D.N.Y. Oct. 22, 2009) (collecting cases).

Plaintiff's lower extremities, he found reduced flexion and extension in the hips and ankles, but full range of motion in the knees.  (*Id*.)

As part of the examination, Plaintiff reported being able to cook every day and clean her home once or twice a week.  (T. 235.)  She was unable to do laundry, shopping, or childcare. (*Id*.)  She had no problems showering and dressing herself each day.  (*Id*.)

Based on his examination, Dr. Jenouri opined Plaintiff had "marked restriction" in walking, standing, and sitting for long periods.  (*Id*.)  He also found marked restriction in bending, stair climbing, lifting, and carrying.  (*Id*.)

On July 13, 2017, Dr. Jenouri examined Plaintiff again, on behalf of the Broome County Department of Social Services.  (T. 244-247.)  Plaintiff again reported lower back pain radiating to her lower extremities and precipitated by activity.  (T. 244.)  She still reported the ability to cook light meals and do basic cleaning, as well go shopping on occasion. (*Id*.)

During the 2017 examination, Plaintiff appeared in no acute distress, but had an antalgic gait and difficulty walking on her heels and toes.  (T. 245.)  She used no assistive devices and required no help changing for the examination, getting on and off the examination table, or rising from a chair.  (*Id*.)  Her cervical and lumbar spine showed reduced flexion, extension, and rotary movement, and she had bilateral positive straight leg raises.  (T. 246.)  Dr. Jenouri found no muscle atrophy in any of Plaintiff's extremities and observed intact hand and finger dexterity with full grip strength.  (*Id*.)

Following this examination, Dr. Jenouri opined Plaintiff was limited to walking, standing, climbing stairs, and similar activities for periods less than two hours.  He also opined Plaintiff was limited to pushing, pulling, and bending for "periods of one hour and fewer than

two hours," and limited Plaintiff to occasional lifting and carrying of ten pounds.  (T. 247.)

The ALJ reviewed both consultative opinions of Dr. Jenouri and assigned them "some, but less than substantial weight."  (T. 22-23.)  He found his 2016 opinion that Plaintiff had marked restrictions in walking, standing, and sitting "for long periods" to be too vague to be useful.  (T. 23, 237.)  The ALJ also noted the lack of specificity of Dr. Jenouri's opinion that Plaintiff could walk or stand "for periods" of one hour and fewer than two hours.  (T. 247.) Interpreting this statement as a finding that the ALJ could continuously walk for close to two hours at one time, the ALJ issued a more restrictive RFC, which limited Plaintiff to standing or walking for two hours over the course of the entire workday and called for opportunities to sit down or change positions.  (T. 23, 247.)  The ALJ found support in the consultative examination reports and the broader medical record for Dr. Jenouri's opinion that Plaintiff could lift up to ten pounds occasionally, and incorporated this finding into Plaintiff's RFC.  (*Id*.)

### 5.  Dr. Manuja Warnakulasuriya

Dr. Manuja Warnakulasuriya first began treating Plaintiff for lower back pain in January 2016.  (T. 274).  She issued a Medical Source Statement on June 5, 2018, consisting of a check-box form with some handwritten notes.  (T. 305-306.).  Dr. Warnakulasuriya opined Plaintiff would be off task more than 33% of the workday and could be expected to miss more than four days per month.  (T. 306.)  She also opined Plaintiff could occasionally lift up to five pounds. (*Id*.)  Dr. Warnakulasuriya qualified most of her opinion by indicating she had based it upon Plaintiff's own reports about her pain and functional limitations.  (T. 305-306.)  For example, in response to a question about how many hours Plaintiff would be able to sit out of an eight hour day, Dr. Warnakulasuriya wrote "[Plaintiff] reports [she] needs to change positions every 5

17

minutes." (T. 306.) Later, with regard to Plaintiff's ability to stand and walk, Dr.

Warnakulasuriya wrote "[Plaintiff] reports [she is] not able to stand for more than 5-10 minutes."

(*Id*.)

The ALJ assigned "less than substantial weight" to Dr. Warnakulasuriya's opinion. (T.

23.) When considering Dr. Warnakulasuriya's opinion, the ALJ recognized her status as a

treating physician. (*Id*.) However, the ALJ also noted the inconsistency between the treating

physician's opinion and her own treatment notes. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.

2004); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the

record conflicts with the treating physician's opinion . . . that opinion will not be deemed

controlling. And the less consistent that opinion is with the record as a whole, the less weight it

will be given."); 20 C.F.R. § 404.1527(c)(2). For example, Plaintiff visited Dr. Warnakulasuriya

in May 2017 and showed only mild pain in the lumbar spine with movement, along with normal

deep tendon reflexes, and normal gait while walking. (T. 23, 271.) At her next appointment in

October 2017, Plaintiff ranked her current pain as a 0/10, and reported only mild pain in the

lumbar spine with movement. (T. 23, 260.) This discrepancy was further highlighted by the

physician's repeated notations on the opinion form showing it was based on Plaintiff's current

description of her condition. Coupled with the documented inconsistencies with the overall

medical record, the ALJ had substantial evidence to discount Dr. Warnakulasuriya's opinion.

### 6. Sit/Stand Option

Plaintiff contends the ALJ had no basis to determine Plaintiff would be

able to work at sedentary jobs that allowed her to change positions from sitting to standing every

thirty minutes. Beyond the general medical evidence regarding Plaintiff's ability to sit, stand,

and walk, the ALJ also set out specific evidence supporting this conclusion.  For example, the

ALJ noted Plaintiff's statement to her physician that she was able to walk for thirty minutes at a

time for exercise, and Plaintiff's testimony about talking online courses with short breaks as

needed.  (T. 23, 43, 258.)  The ALJ also quoted Plaintiff's description of her need "to shift her

weight while sitting *or* sit and stand every 10 to 15 minutes to become comfortable."  (T. 22,

232.) (emphasis supplied).  During the hearing, the ALJ confirmed with the VE that an

employee's need to shift their weight at will while sitting would not impact the ability to perform

a sedentary job.  (T. 57.)  Therefore, the ALJ had substantial evidence to conclude Plaintiff was

able to perform sedentary work if allowed to shift her weight at will and stand every thirty

minutes.

As discussed above, the ALJ's decision includes detailed consideration of the medical

opinions and related treatment notes, consistent with the requirements of 20 C.F.R. § 404.1527.

(T. 18-24.)  Further, the ALJ adequately considered the various limitations (and lack thereof)

identified in the medical opinions, and sufficiently explained the specific weight he afforded to

each opinion.  (T. 21-23.)  The ALJ was responsible for reviewing all the medical and other

evidence before him, resolving any inconsistencies therein, and making a determination

consistent with the evidence as a whole.  *See Bliss v. Colvin*, No. 3:13-CV-1086 (GLS/CFH),

2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all

medical evidence and resolve material conflicts where sufficient evidence provides for such.");

*accord Petell v. Comm'r of Soc. Sec.*, No.7:12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10

(N.D.N.Y. Mar. 21, 2014).  Thus, in formulating Plaintiff's RFC, the ALJ was not required to

accept every limitation in the various medical opinions nor craft an RFC mirroring a particular

opinion.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's

19

conclusion may not perfectly correspond with any of the opinions of medical sources cited in his

decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is]

consistent with the record as a whole."); *Zongos v. Colvin*, No. 5:12-cv-1007 (GLS/ESH), 2014

WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to

afford weight to a portion of a treating physician's opinion, but not to another portion); *see also*

*Veino v. Barnhart*, 312 F.3d 578, 588-89 (2d Cir. 2002) (ALJ did not err in crediting only a

small part of treating physician's report).

At best, Plaintiff's complaints regarding the medical opinion evidence, the treatment

record, Plaintiff's testimony, and the resulting RFC determination are premised upon a

disagreement over how the ALJ resolved arguably conflicting evidence about Plaintiff's

functional limitations.  This Court will not reweigh the evidence presented to the ALJ.  *See*

*Warren v. Comm'r of Soc. Sec.*, 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9

(N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a

plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the

administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.

[Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is

substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp.

150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation* adopted by 2016 WL

7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993)

("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v.*

*Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).  Accordingly, the Court

finds the ALJ's RFC determination to be supported by substantial evidence.

    **C.**    **Substantial Evidence Supports the ALJ's Step Five Determination**

The burden shifts to the Commissioner at Step Five "to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ utilizes a vocational expert ("VE") at the hearing, the VE is generally questioned using a hypothetical inquiry incorporating Plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect Plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper.  *Id*. at 276-77.

VE George Horn testified at the hearing.  (T. 51-59.)  Because this court has found the ALJ's RFC determination was supported by substantial evidence, it also finds the ALJ's hypothetical to VE Horn was proper, and his step five determination was supported by substantial evidence.  Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the SSA.  20 C.F.R. § 404.1520(g).

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is

<u>**GRANTED**</u>; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

<u>**AFFIRMED**</u>, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is <u>**DISMISSED**</u>.


Dated: August 5, 2020
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

22